08cv6189GBD
ECF CASE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------- x

LUMIRAM ELECTRIC CORPORATION,      :

                              Plaintiff,      :

          -against-                 :

SELECTIVE INSURANCE COMPANY,        :

                              Defendant.  :
-------------------------------------------- x

Case No. **6189**-CV-2008

**COMPLAINT**

Jury Trial Requested

Plaintiff LUMIRAM ELECTRIC CORPORATION ("LUMIRAM"), by its attorneys, McDonnell & Adels, P.C., states, upon information and belief, as follows:

### JURISDICTION

1.  This Court has jurisdiction under 28 U.S.C.A. §§ 1332(a)(1) & (c)(1).

2.  Venue is proper in the Southern District of New York under 28 U.S.C.A. § 1391(a)(1) and 28 U.S.C.A. § 1391(c), as Defendant has consented, by contract, to personal jurisdiction in the "United States District Court of the District of the District in which the insured property was located at the time of the loss..." *See* SELECTIVE Policy, attached hereto as Exhibit A.

3.  The insured property is located in this district at 615 Fifth Avenue, Larchmont New York 10538 (Westchester County, NY).

### THE PARTIES

4.  Plaintiff LUMIRAM is a New York Corporation with a principal place of business located at 615 Fifth Avenue, Larchmont, New York 10538.

5.  Defendant SELECTIVE INSURANCE COMPANY ("SELECTIVE") is a New Jersey Corporation with a principal place of business located at 40 Wantage Avenue, Branchville, New Jersey 07826.

### BACKGROUND FACTS

6.  On April 15, 2007, a policy issued by SELECTIVE to LUMIRAM, was in effect covering the premises.

7.  The SELECTIVE policy afforded coverage to LUMITRAM in the amount of $500,000.

8.      The policy number regarding the SELECTIVE policy in effect concerning the property, on April 15, 2007, was FLD1131115 with a policy period of 10/14/06 through 10/14/07.

9.      SELECTIVE'S policy of insurance states as follows:

**A.      COVERAGE A – Building property**
We insure against direct physical loss by or from Flood to:
**1.** the building described on the **declaration page** at the **described location…**

10.     SELECTIVE issued a Declaration affording coverage to LUMIRAM in the amount of $500,000 for flood damage. *See* SELECTIVE Policy, attached hereto as Exhibit A.

11.     On April 15, 2007 the plaintiff, LUMIRAM, sustained water damage to its premises located and known as 615 Fifth Avenue, Larchmont New York 10538, (hereinafter "the premises".)

12.     The water damage was caused by a flood which occurred on April 15, 2007.

13.     The plaintiff timely submitted a properly prepared, sworn statement and proof of loss in the amount of $463,270.78, annexed hereto as Exhibit B.

14.     The defendant acknowledged receipt of plaintiff's properly prepared, sworn statement and proof of loss.

15.     The defendant offered $131,685.36 as payment of the damages which the defendant acknowledged occurred as a result of the flood of April 15, 2007. Plaintiff conditionally accepted this offer as a partial payment only.

16.     Plaintiff has attempted, in good faith, to obtain the outstanding balance due and owing to plaintiff by defendant.

17.     The remaining amount of $331,585.42 is still unpaid, outstanding and due.

### FIRST CLAIM FOR RELIEF
### Breach of Contract

18.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1-17 hereof.

19.     At all times subsequent to April 15, 2007, the plaintiff fully complied with its duties and obligations under the SELECTIVE policy, including its obligation to provide notice to SELECTIVE.

20.    At all times subsequent to April 15, 2007, the plaintiff fully complied with its duties and obligations under the SELECTIVE policy including its obligation to cooperate with SELECTIVE'S investigation.

21.    At all times subsequent to April 15, 2007, the plaintiff fully complied with all of its duties and obligations under the SELECTIVE policy.

22.    The Defendant is in breach of its contract under the policy.

23.    The remaining balance of $331,585.42 remains unpaid, outstanding and due.

24.    The defendant continues to unreasonably delay full payment of plaintiff's claim in bad faith.

25.    The defendant continues to unreasonably disclaim plaintiff's claim in bad faith.

26.    Plaintiff has been damaged and demands judgment in the amount of $331,585.42, together with interest, which is the amount unpaid, outstanding, and due to plaintiff under the SELECT insurance policy.

### SECOND CLAIM FOR RELIEF
### Improper Delay of Payment

27.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-17 and 19-26 hereof.

28.    The Defendant has acted in bad faith by improperly delaying the full payment of this claim.

29.    As a result of the aforesaid conduct, LUMIRAM is entitled to a declaration that it is entitled to $331,585.42 plus interest and attorney fees.

### THIRD CLAIM FOR RELIEF
### Improper Disclaimer of Coverage

30.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1-17, 19-26, and 28-29 hereof.

31.    The Defendant has acted in bad faith by improperly improperly disclaiming coverage of this claim.

**WHEREFORE**, Plaintiff requests entry of a judgment:

i)    Awarding Plaintiff $331,585.42, together with interest, which is the amount unpaid, outstanding, and due to plaintiff under the SELECT insurance policy on the FIRST CLAIM FOR RELIEF;

ii)   Awarding Plaintiff $331,585.42, together with interest, which is the amount unpaid, outstanding, and due to plaintiff under the SELECT insurance policy on the SECOND CLAIM FOR RELIEF;

iii)   Awarding Plaintiff $331,585.42, together with interest, which is the amount unpaid, outstanding, and due to plaintiff under the SELECT insurance policy on the THIRD CLAIM FOR RELIEF;

iv)   Awarding Plaintiff costs, fees, and disbursements of this action; and

v)   Granting Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

Dated:       Garden City, New York
             June 24, 2008

MCDONNELL & ADELS, P.C.
Attorneys for Plaintiff
LUMIRAM ELECTRIC CORPORATION
401 Franklin Avenue
Garden City, New York 11530
(516) 328-3500

By:   _____
      Evan W. Klestzick (EK0237)

EXHIBIT "A"



# SELECTIVE
## *Insurance*

FLD1131115

# SELECTIVE INSURANCE COMPANY OF NEW YORK
## 40 WANTAGE AVENUE, BRANCHVILLE, NJ 07890

## FLOOD GENERAL POLICY DECLARATION

| Named Insured and Mailing Address: | Policy Period: 10/14/2006 to 10/14/2007 |
|---|---|
| LUMIRAM DEVELOPMENT CORP<br>615 FIFTH AVENUE<br>LARCHMONT, NY 10538 | Policy Term: ONE YEAR |
| | Agent No: 001135800000 |
| | PREFERRED SERVICES GROUP OF NY LTD<br>707 WESTCHESTER AVE STE 201<br>WHITE PLAINS, NY 10604-3112 |
| Payor: INSURED | Agent Phone: 914-683-3990 |

The building covered by this policy is located at the above mailing address unless otherwise stated below.

### RATING DESCRIPTION

| Property/Building | Contents Location |
|---|---|
| NON-RESIDENTIAL<br>ONE FLOOR<br>NO BASEMENT | |

Building constructed or substantially improved on or after  12/01/1949

### LOCATION INFORMATION

Community Name: MAMARONECK, TOWN OF         No: 3609170000A
Status: REGULAR   CRS Class:     FIRM Zone: A   Elevation Difference:

### COVERAGE AND RATING INFORMATION

| Coverage Type | Coverage Limit | Deductible | Rate | Deductible Adjustment | Premium |
|---|---|---|---|---|---|
| Building | $ 500,000 | $ 2,000 | 00.83/00.71 | $ -149.00 | $ 3,581.00 |
| Contents | $ 0 | $ 0 | 00.00/00.00 | $ 0.00 | $ 0.00 |
| | | | ICC PREMIUM | | $ 60.00 |
| | | | ANNUAL SUBTOTAL | | $ 3,641.00 |
| | | | FEDERAL POLICY FEE | | $ 30.00 |
| | | | TOTAL PREMIUM | | $ 3,671.00 |

Attachments:

| FD0220 (10-05) | FD0221 (10-05) | FD0003 (01-01) | FD0086 (05-03) |
|---|---|---|---|

FIRST MORTGAGEE

J P MORGAN CHASE BANK NA-SMALL BUSINESS LOAN
SERVICING ITS SUCCESSORS AND OR ASSIGNS ATIMA
PO BOX 4660
HOUSTON, TX 77210

ISSUE DATE: 10/17/2006          COUNTERSIGNATURE:

FD0001 (06/98)

INSURED COPY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ CAREFULLY.**

## STANDARD FLOOD INSURANCE POLICY

## ENDORSEMENT

This Endorsement replaces Paragraph 2, Coverage D, — Increased Cost of Compliance, III — Property Covered of the Dwelling, General Property, and Residential Condominium Building Association Policies with the following paragraph.

2.  **Limit of Liability**

We will pay you up to $30,000 under this Coverage **D** — Increased Cost of Compliance, which only applies to **policies** with **building** coverage (Coverage **A**). Our payment of claims under Coverage **D** is in addition to the amount of coverage which you selected on the **application** and which appears on the **Declarations Page.**

But the maximum you can collect under this **policy** for both Coverage **A** — Building Property and Coverage **D** — Increased Cost of Compliance cannot exceed the maximum permitted under the **Act.**  We do not charge a separate deductible for a claim under Coverage **D.**



# GENERAL PROPERTY FORM

## STANDARD FLOOD INSURANCE POLICY

# GENERAL PROPERTY FORM

## Summary of Significant Changes, December 31, 2000

1. **Section III. — Property Covered, A. Coverage A — Building Property, 3.**

   Additions and extensions to buildings that are connected by a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof may be insured as part of the building. At the option of the insured, these extensions and additions may be insured separately. Additions and extensions that are attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the building and cannot be insured separately.

2. **Section III. — Property Covered, B. Coverage B — Personal Property, 5. Special Limits**

   Coverage for fine arts, collectibles, jewelry, and furs, etc., has been increased to $2500.

3. **Section III. — Property Covered B. Coverage B — Personal Property, 8.**

   Coverage for condominium unit owners has been extended to apply up to 10 percent of the contents coverage for losses to interior walls, floors, and ceilings not covered by the condominium association's master policy.

4. **Section III. — Property Covered, C. Coverage C — Other Coverages, 2.a. & b.**

   Coverage for the two loss avoidance measures (sandbagging and relocation of property to protect it from flood or the imminent danger of flood) has been increased to $1,000 for each.

5. **Section III. — Property Covered, C. Coverage C — Other Coverages, 3. Pollution Damage**

   Coverage for damage caused by pollutants to covered property has been limited to $10,000. This does not cover the cost of testing for or monitoring of pollutants unless it is required by law or ordinance.

6. **Section IV. — Property Not Covered, 5.a. & b.**

   Coverage has been changed to pay for losses to self-propelled vehicles used to service the described location or designed to assist handicapped persons provided that the vehicles are in a building at the described location.

7. **Section IV. — Property Not Covered, 7.**

   Coverage is now specifically excluded for scrip and stored value cards.

8. **Section IV. — Property Not Covered, 14.**

   Coverage for swimming pools, hot tubs, and spas (that are not bathroom hot tubs or spas), and their equipment is now excluded.

9. **Section V. — Exclusions, B.1 & 2.**

   The explanation of when coverage begins as it relates to a loss in progress has been simplified.

10. **Section V. — Exclusions, C.**

    Coverage has been clarified to pay for losses from land subsidence under certain circumstances. Subsidence of land along a lake shore or similar body of water which results from the erosion or undermining of the shoreline caused by waves or currents of water exceeding cyclical levels that result in a flood continues to be covered. All other land subsidence is now excluded.

11. **Section V. — Exclusions, D.4.b.(3)**

    Coverage is now excluded for water, moisture, mildew, or mold damage caused by the policyholder's failure to inspect and maintain the insured property after the flood waters recede.

12. **Section V. — Exclusions, D.6.**

    Coverage is added for damage from the pressure of water against the insured structure with the requirement that there be a flood in the area and the flood is the proximate cause of damage from the pressure of water against the insured structure.

13. **Section VII. — General Conditions, G. Reduction and Reformation of Coverage, 2.a.(2)**

    If it is discovered before a claim occurs that there is incomplete rating information, the policyholder has 60 days to submit missing rating information. Otherwise, the coverage is limited to the amount of coverage that can be purchased for the premium originally received and can only be increased by an endorsement that is subject to the appropriate waiting period (currently 30 days).

## STANDARD FLOOD INSURANCE POLICY

### GENERAL PROPERTY FORM

PLEASE READ THE POLICY CAREFULLY.  THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS.

THIS POLICY PROVIDES NO COVERAGE:

1.  IN A REGULAR PROGRAM COMMUNITY, FOR A RESIDENTIAL CONDOMINIUM BUILDING, AS DEFINED IN THIS POLICY; AND

2.  EXCEPT FOR PERSONAL PROPERTY COVERAGE, FOR A UNIT IN A CONDOMINIUM BUILDING.

---

## I. — AGREEMENT

The Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR).

We will pay you for **direct physical loss by or from flood** to your insured property if you:

1.  Have paid the correct premium;

2.  Comply with all terms and conditions of this **policy;** and

3.  Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your **policy** based on our review.

---

## II. — DEFINITIONS

A.  In this **policy,** "you" and "your" refer to the insured(s) shown on the **Declarations Page** of this **policy.** "Insured(s)" includes:   Any mortgagee and loss payee named in the **Application** and **Declarations Page,** as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

**Flood,** as used in this flood insurance **policy,** means:

1.  A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

    a.  Overflow of inland or tidal waters;

    b.  Unusual and rapid accumulation or runoff of surface waters from any source;

    c.  **Mudflow.**



2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a **flood** as defined in **A.1.a.** above.

B. The following are the other key definitions that we use in this **policy**:

1. **Act.** The National Flood Insurance Act of 1968 and any amendments to it.

2. **Actual Cash Value.** The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3. **Application.** The statement made and signed by you or your agent in applying for this **policy.** The **application** gives information we use to determine the eligibility of the risk, the kind of **policy** to be issued, and the correct premium payment. The **application** is part of this flood insurance **policy.** For us to issue you a **policy,** the correct premium payment must accompany the **application.**

4. **Base Flood.** A flood having a one percent chance of being equaled or exceeded in any given year.

5. **Basement.** Any area of the **building,** including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

6. **Building.**

   a. A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;

   b. A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or

   c. A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

   **Building** does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle, except as described in **B.6.c.,** above.

7. **Cancellation.** The ending of the insurance coverage provided by **this policy** before the expiration date.

8. **Condominium.** That form of ownership of real property in which each **unit** owner has an undivided interest in common elements.

9. **Condominium Association.** The entity made up of the unit owners responsible for the maintenance and operation of:

   a. Common elements owned in undivided shares by unit owners; and

   b. Other real property in which the unit owners have use rights ;

   where membership in the entity is a required condition of unit ownership.

10. **Declarations Page.** A computer-generated summary of information you provided in the **application** for insurance. The **Declarations Page** also describes the term of the **policy,** limits of coverage, and displays the premium and our name. The **Declarations Page** is a part of this flood insurance **policy.**

11. **Described Location.** The location where the insured **building** or personal property are found. The **described location** is shown on the **Declarations Page.**

12. **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a **flood.** There must be evidence of physical changes to the property.

13. **Elevated Building.** A **building** that has no **basement** and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

14. **Emergency Program.** The initial phase of a community's participation in the **National Flood Insurance Program.** During this phase, only limited amounts of insurance are available under the **Act.**

15. **Expense Constant.** A flat charge you must pay on each new or renewal **policy** to defray the expenses of the Federal Government related to **flood** insurance.

16. **Federal Policy Fee.** A flat charge you must pay on each new or renewal **policy** to defray certain administrative expenses incurred in carrying out the **National Flood Insurance Program.** This fee covers expenses not covered by the **expense constant.**

17. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the insured **building.**

18. **Mudflow.** A river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not **mudflows.**

19. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the **Act** and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

20. **Policy.** The entire written contract between you and us. It includes:

    **a.** This printed form;

    **b.** The **application** and **Declarations Page;**

    **c.** Any endorsement(s) that may be issued; and

    **d.** Any renewal certificate indicating that coverage has been instituted for a new **policy** and new **policy** term.

    Only one **building,** which you specifically described in the **application,** may be insured under this **policy.**

21. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

22. **Post-FIRM Building.** A **building** for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

23. **Probation Premium.** A flat charge you must pay on each new or renewal **policy** issued covering property in a community that the **NFIP** has placed on probation under the provisions of 44 CFR 59.24.

24. **Regular Program.** The final phase of a community's participation in the **National Flood Insurance Program.** In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the **Act.**

25. **Residential Condominium Building.** A **building,** owned and administered as a **condominium,** containing one or more family **units** and in which at least 75 percent of the floor area is residential.

26. **Special Flood Hazard Area.** An area having special **flood,** or **mudflow,** and/or **flood**-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.

27. **Stock.** Merchandise held in storage or for sale, raw materials, and in-process or finished goods, including supplies used in their packing or shipping. **Stock** does not include any property not covered under Section **IV.** Property Not Covered, except the following:

    **a.** Parts and equipment for self-propelled vehicles;

    **b.** Furnishings and equipment for watercraft;

    **c.** Spas and hot-tubs, including their equipment; and

    **d.** Swimming pool equipment.

28. **Unit.** A **unit** in a **condominium building.**

29. **Valued Policy.** A **policy** in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a **valued policy.**

## III. — PROPERTY COVERED

### A. COVERAGE A — BUILDING PROPERTY

We insure against **direct physical loss by or from flood** to:

1. The **building** described on the **Declarations Page** at the **described location.** If the **building** is a **condominium building** and the named insured is the **condominium association,** Coverage **A** includes all **units** within the **building** and the **improvements** within the **units,** provided the **units** are owned in common by all **unit** owners.

2. We also insure **building** property for a period of 45 days at another location, as set forth in **III.C.2.b.,** Property Removed to Safety.

3. Additions and extensions attached to and in contact with the **building** by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the **building** by means of a common interior wall that is not a solid load-bearing wall are always considered part of the **building** and cannot be separately insured.

4. The following fixtures, machinery, and equipment, which are covered under Coverage **A** only:

   a. Awnings and canopies;

   b. Blinds;

   c. Carpet permanently installed over unfinished flooring;

   d. Central air conditioners;

   e. Elevator equipment;

   f. Fire extinguishing apparatus;

   g. Fire sprinkler systems;

   h. Walk-in freezers;

   i. Furnaces;

   j. Light fixtures;

   k. Outdoor antennas and aerials attached to **buildings;**

   l. Permanently installed cupboards, book-cases, paneling, and wallpaper;

   m. Pumps and machinery for operating pumps;

   n. Ventilating equipment;

   o. Wall mirrors, permanently installed; and

   p. In the **units** within the **building,** installed:

      (1) Built-in dishwashers;

      (2) Built-in microwave ovens;

      (3) Garbage disposal units;

      (4) Hot water heaters, including solar water heaters;

      (5) Kitchen cabinets;

      (6) Plumbing fixtures;

      (7) Radiators;

      (8) Ranges;

      (9) Refrigerators; and

      (10) Stoves.

5. Materials and supplies to be used for construction, alteration, or repair of the insured **building** while the materials and supplies are stored in a fully enclosed **building** at the **described location** or on an adjacent property.

6. A **building** under construction, alteration, or repair at the **described location.**

   a. If the structure is not yet walled or roofed as described in the definition for **building** (see **II.B. 6.a.**), then coverage applies:

      (1) Only while such work is in progress; or

      (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

**b.** However, coverage does not apply until the building is walled and roofed if the lowest floor, including the **basement** floor, of a non-**elevated building** or the lowest elevated floor of an **elevated building** is:

**(1)** Below the **base flood** elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or

**(2)** Below the **base flood** elevation adjusted to include the effect of wave action in Zones VE or V1-V30.

The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.

**7.** A manufactured home or a travel trailer as described in the Definitions section (see **II.B.6.b.** and **II.B.6.c.**).

If the manufactured home or travel trailer is in a **special flood hazard area**, it must be anchored in the following manner at the time of the loss:

**a.** By over-the-top or frame ties to ground anchors; or

**b.** In accordance with the manufacturer's specifications; or

**c.** In compliance with the community's floodplain management requirements

unless it has been continuously insured by the **NFIP** at the same **described location** since September 30, 1982.

**8.** Items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone. Coverage is limited to the following:

**a.** Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

**(1)** Central air conditioners;

**(2)** Cisterns and the water in them;

**(3)** Drywall for walls and ceilings in a **basement** and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

**(4)** Electrical junction and circuit breaker boxes;

**(5)** Electrical outlets and switches;

**(6)** Elevators, dumbwaiters, and related equipment, except for related equipment installed below the **base flood** elevation after September 30, 1987;

**(7)** Fuel tanks and the fuel in them;

**(8)** Furnaces and hot water heaters;

**(9)** Heat pumps;

**(10)** Nonflammable insulation in a **basement;**

**(11)** Pumps and tanks used in solar energy systems;

**(12)** Stairways and staircases attached to the **building,** not separated from it by elevated walkways;

**(13)** Sump pumps;

**(14)** Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

**(15)** Well water tanks and pumps;

**(16)** Required utility connections for any item in this list; and

**(17)** Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a **building.**

**b.** Clean-up.

**B.  COVERAGE B — PERSONAL PROPERTY**

**1.** If you have purchased personal property coverage, we insure, subject to **B.2., 3.,** and **4.** below, against **direct physical loss by or from flood** to personal property inside a fully enclosed insured **building:**

**a.** Owned solely by you, or in the case of a **condominium,** owned solely by the **condominium association** and used exclusively in the conduct of the business affairs of the **condominium association;** or

**b.** Owned in common by the unit owners of the **condominium association.**

We also insure such personal property for 45 days while stored at a temporary location, as set forth in **III.C.2.b.** Property Removed to Safety.

2. When this **policy** covers personal property, coverage will be either for household personal property or other than household personal property, while within the insured **building**, but not both.

   **a.** If this policy covers household personal property, it will insure household personal property usual to a living quarters, that:

     **(1)** Belongs to you, or a member of your household, or at your option:

       **(a)** Your domestic worker;

       **(b)** Your guest; or

     **(2)** You may be legally liable for.

   **b.** If this policy covers other than household personal property, it will insure your:

     **(1)** Furniture and fixtures;

     **(2)** Machinery and equipment;

     **(3) Stock**; and

     **(4)** Other personal property owned by you and used in your business, subject to **IV. Property Not Covered.**

3. Coverage for personal property includes the following property, subject to **B.1.a.** and **B.1.b.** above, which is covered under Coverage **B** only:

   **a.** Air conditioning units installed in the **building;**

   **b.** Carpet, not permanently installed, over unfinished flooring;

   **c.** Carpets over finished flooring;

   **d.** Clothes washers and dryers;

   **e.** "Cook-out" grills;

   **f.** Food freezers, other than walk-in, and food in any freezer;

   **g.** Outdoor equipment and furniture stored inside the insured building;

   **h.** Ovens and the like; and

   **i.** Portable microwave ovens and portable dishwashers.

4. Coverage for items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

   **a.** Air conditioning units, portable or window type;

   **b.** Clothes washers and dryers; and

   **c.** Food freezers, other than walk-in, and food in any freezer.

5. **Special Limits.** We will pay no more than $2,500 for any loss to one or more of the following kinds of personal property:

   **a.** Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

   **b.** Rare books or autographed items;

   **c.** Jewelry, watches, precious and semi-precious stones, or articles of gold, silver, or platinum;

   **d.** Furs or any article containing fur which represents its principal value.

6. We will pay only for the functional value of antiques.

7. If you are a tenant, you may apply up to 10 percent of the Coverage **B** limit to **improvements:**

   **a.** Made a part of the **building** you occupy; and

   **b.** You acquired or made at your expense, even though you cannot legally remove them.

This coverage does not increase the amount of insurance that applies to insured personal property.

8. If you are a **condominium unit** owner, you may apply up to 10 percent of the Coverage **B** limit to cover loss to interior:

   **a.** Walls;

   **b.** Floors; and

   **c.** Ceilings;

that are not covered under a **policy** issued to the **condominium association** insuring the **condominium building.**

This coverage does not increase the amount of insurance that applies to insured personal property.

9. If you are a tenant, personal property must be inside the fully enclosed **building.**

## C. COVERAGE C — OTHER COVERAGES

### 1. Debris Removal

a. We will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere.

b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

c. This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

### 2. Loss Avoidance Measures

a. Sandbags, Supplies, and Labor

(1) We will pay up to $1,000 for the costs you incur to protect the insured **building** from a **flood** or imminent danger of **flood,** for the following:

(a) Your reasonable expenses to buy:

(i) Sandbags, including sand to fill them;

(ii) Fill for temporary levees;

(iii) Pumps; and

(iv) Plastic sheeting and lumber used in connection with these items; and

(b) The value of work, at the Federal minimum wage, that you perform.

(2) This coverage for Sandbags, Supplies, and Labor only applies if damage to insured property by or from **flood** is imminent and the threat of **flood** damage is apparent enough to lead a person of common prudence to anticipate **flood** damage. One of the following must also occur:

(a) A general and temporary condition of flooding in the area near the **described location** must occur, even if the **flood** does not reach the insured **building;** or

(b) A legally authorized official must issue an evacuation order or other civil order for the community in which the insured **building** is located calling for measures to preserve life and property from the peril of **flood.**

This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

b. Property Removed to Safety

(1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the **described location** that contains the property in order to protect it from **flood** or the imminent danger of **flood.**

Reasonable expenses include the value of work, at the Federal minimum wage, that you perform.

(2) If you move insured property to a location other than the **described location** that contains the property, in order to protect it from **flood** or the imminent danger of **flood,** we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed **building** or otherwise reasonably protected from the elements.

Any property removed, including a moveable home described in **II.B.6.b.** and **c.,** must be placed above ground level or outside of the **special flood hazard area.**

This coverage does not increase the Coverage **A** or Coverage **B** limit of liability.

**3. Pollution Damage**

We will pay for damage caused by **pollutants** to covered property if the discharge, seepage, migration, release, or escape of the **pollutants** is caused by or results from **flood.** The most we will pay under this coverage is $10,000. This coverage does not increase the Coverage **A** or Coverage **B** limits of liability. Any payment under this provision when combined with all other payments for the same loss cannot exceed the **replacement cost** or **actual cash value,** as appropriate, of the covered property. This coverage does not include the testing for or the monitoring of **pollutants** unless required by law or ordinance.

**D. COVERAGE D — INCREASED COST OF COMPLI-ANCE**

**1. General**

This **policy** pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering **flood** damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

**a.** Nonresidential structures.

**b.** Residential structures with **basements** that satisfy the Federal Emergency Management Agency's (FEMA's) standards published in the Code of Federal Regulations (44 CFR 60.6 (b) or (c)).

**2. Limit of Liability**

We will pay you up to $20,000 under this Coverage **D** — Increased Cost of Compliance, which only applies to **policies** with **building** coverage (Coverage **A**). Our payment of claims under Coverage **D** is in addition to the amount of coverage which you selected on the **application** and which appears on the **Declarations Page.** But the maximum you can collect under this **policy** for both Coverage **A** — Building Property and Coverage **D** — Increased Cost of Compliance cannot exceed the maximum permitted under the **Act.** We do not charge a separate deductible for a claim under Coverage **D.**

**3. Eligibility**

**a.** A structure covered under Coverage **A** — Building Property sustaining a loss caused by a **flood** as defined by this **policy** must:

(1) Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

(a) The structure is covered by a contract of flood insurance issued under the **NFIP.**

(b) The structure has suffered **flood** damage on two occasions during a 10-year period which ends on the date of the second loss.

(c) The cost to repair the **flood** damage, on average, equaled or exceeded 25 percent of the market value of the structure at the time of each **flood** loss.

(d) In addition to the current claim, the **NFIP** must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

(2) Be a structure that has had **flood** damage in which the cost to repair equals or exceeds 50 percent of the market value of the structure at the time of the **flood.** The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

**b.** This Coverage **D** pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the **National Flood Insurance Program** found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

(1) 3.a.(1) above.

(2) Elevation or floodproofing in any risk zone to preliminary or advisory **base flood** elevations provided by FEMA which the State or local government has adopted and is enforcing for **flood**-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with **base flood** elevations. This also includes compliance activities in zones where **base flood** elevations are being increased, and a **flood**-damaged structure must comply with the higher advisory **base flood** elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for **flood**-damaged structures to elevations derived solely by the community.

(3) Elevation or floodproofing above the **base flood** elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the **base flood** elevation.

c. Under the minimum **NFIP** criteria at 44 CFR 60.3(b)(4), States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the **base flood** elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage **D**.

d. structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion **D.5.g.** below.

e. This coverage will also pay to bring a **flood**-damaged structure into compliance with State or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

4. **Conditions**

a. When a structure covered under Coverage **A** — Building Property sustains a loss caused by a **flood**, our payment for the loss under this Coverage **D** will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the **building** debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

b. When the **building** is repaired or rebuilt, it must be intended for the same occupancy as the present **building** unless otherwise required by current floodplain management ordinances or laws.

5. **Exclusions**

Under this Coverage **D** — Increased Cost of Compliance we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the **Emergency Program.**

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants.**

c. The loss in value to any insured **building** or other structure due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a **building** demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage **D:**

    (1) Until the **building** is elevated, flood-proofed, demolished, or relocated on the same or to another premises; and

    (2) Unless the building is elevated, flood-proofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed 2 years.

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or **improvements** made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the **NFIP's** minimum requirements. This includes any situation where the insured has received from the State or community a variance in connection with the current **flood** loss to rebuild the property to an elevation below the **base flood** elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any structure insured under an **NFIP** Group Flood Insurance Policy.

l. Assessments made by a **condominium association** on individual **condominium unit** owners to pay increased costs of repairing commonly owned **buildings** after a **flood** in compliance with State or local floodplain management ordinances or laws.

6. **Other Provisions**

    All other conditions and provisions of this **policy** apply.

## IV. — PROPERTY NOT COVERED

We do not cover any of the following property:

1. Personal property not inside the fully enclosed **building;**

2. A **building**, and personal property in it, located entirely in, on, or over water or seaward of mean high tide, if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a **building** used as a boathouse or any structure or **building** into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in **II.B.6.c.,** whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

    a. Used mainly to service the described location, or

    b. Designed and used to assist handicapped persons,

    while the vehicles or machines are inside a **building** at the **described location;**

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured **building;**

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. **Buildings** or **units** and all their contents if more than 49 percent of the **actual cash value** of the **building** or **unit** is below ground, unless the lowest level is at or above the **base flood** elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act of 1990 and amendments to these acts;

16. Personal property owned by or in the care, custody, or control of a **unit** owner, except for property of the type and under the circumstances set forth under Coverage **B** — Personal Property;

17. A **residential condominium building** located in a **Regular Program** community.

---

# V. — EXCLUSIONS

---

A. We only provide coverage for **direct physical loss by or from flood,** which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or **described location;**

3. Loss of use of the insured property or **described location;**

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured **building** is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage **D** — Increased Cost of Compliance; or

7. Any other economic loss.

B. We do not insure a loss directly or indirectly caused by a **flood** that is already in progress at the date and time:

1. The **policy** term begins; or

2. Coverage is added at your request.

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by **flood.** Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land areas; or

6. Gradual erosion.

   We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see **II.A.1.c.** and **II.A.2.**).

D. We do not insure for direct physical loss caused directly or indirectly by:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

   a. Substantially confined to the insured **building;** or

LD010011358000000 FLD113115RNY450

b. That is within your control including, but not limited to:

   (1) Design, structural, or mechanical defects;

   (2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or

   (3) Failure to inspect and maintain the property after a **flood** recedes;

5. Water or waterborne material that:

   a. Backs up through sewers or drains;

   b. Discharges or overflows from a sump, sump pump, or related equipment; or

   c. Seeps or leaks on or through insured property;

unless there is a **flood** in the area and the **flood** is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water;

6. The pressure or weight of water unless there is a **flood** in the area and the **flood** is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from **direct physical loss by or from flood** to power, heating, or cooling equipment situated on the **described location;**

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or your agent do or conspire to do to cause loss by **flood** deliberately; or

10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any **building** or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

## VI. — DEDUCTIBLES

A. When a loss is covered under this **policy**, we will pay only that part of the loss that exceeds the applicable deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the **Declarations Page.**

However, when a **building** under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed **building.**

B. In each loss from **flood**, separate deductibles apply to the **building** and personal property insured by this **policy.**

C. No deductible applies to:

1. **III.C.2.** Loss Avoidance Measures; or

2. **III.D.** Increased Cost of Compliance.

## VII. — GENERAL CONDITIONS

A. **Pairs and Sets**

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, less depreciation; or

2. An amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

**B. Concealment or Fraud and Policy Voidance**

**1.** With respect to all insureds under this **policy**, this **policy**:

   **a.** Is void;

   **b.** Has no legal force or effect;

   **c.** Cannot be renewed; and

   **d.** Cannot be replaced by a new **NFIP policy**;

if, before or after a loss, you or any other insured or your agent have at any time:

   **(1)** Intentionally concealed or misrepresented any material fact or circumstance;

   **(2)** Engaged in fraudulent conduct; or

   **(3)** Made false statements;

relating to this **policy** or any other **NFIP** insurance.

**2.** This **policy** will be void as of the date the wrongful acts described in **B.1.** above were committed.

**3.** Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

**4.** This **policy** is also void for reasons other than fraud, misrepresentation, or wrongful act. This **policy** is void from its inception and has no legal force under the following conditions:

   **a.** If the property is located in a community that was not participating in the **NFIP** on the **policy's** inception date and did not join or reenter the program during the **policy** term and before the loss occurred; or

   **b.** If the property listed on the **application** is otherwise not eligible for coverage under the **NFIP**.

**C. Other Insurance**

**1.** If a loss covered by this **policy** is also covered by other insurance that includes **flood** coverage not issued under the **Act,** we will not pay more than the amount of insurance that you are entitled to for lost, damaged, or destroyed property insured under this **policy** subject to the following:

   **a.** We will pay only the proportion of the loss that the amount of insurance that applies under this **policy** bears to the total amount of insurance covering the loss, unless **C.1.b.** or **c.** immediately below applies.

   **b.** If the other policy has a provision stating that it is excess insurance, this **policy** will be primary.

   **c.** This **policy** will be primary (but subject to its own deductible) up to the deductible in the other **flood policy** (except another policy as described in **C.1.b.** above). When the other deductible amount is reached, this **policy** will participate in the same proportion that the amount of insurance under this **policy** bears to the total amount of both policies, for the remainder of the loss.

**2.** If this **policy** covers a **condominium association** and there is a flood insurance **policy** in the name of a **unit** owner that covers the same loss as this **policy**, then this **policy** will be primary.

**D. Amendments, Waivers, Assignment**

This **policy** cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this **policy** can constitute a waiver of any of our rights. You may assign this **policy** in writing when you transfer title of your property to someone else, except under these conditions:

**1.** When this **policy** covers only personal property; or

**2.** When this **policy** covers a structure during the course of construction.

**E. Cancellation of Policy by You**

**1.** You may cancel this policy in accordance with the applicable rules and regulations of the **NFIP**.

**2.** If you cancel this **policy**, you may be entitled to a full or partial refund of premium also under the applicable rules and regulations of the **NFIP**.

**F. Nonrenewal of the Policy by Us**

Your **policy** will not be renewed:

1. If the community where your covered property is located stops participating in the **NFIP**; or

2. If your **building** has been declared ineligible under Section 1316 of the **Act.**

**G. Reduction and Reformation of Coverage**

1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.

2. The **policy** can be reformed to increase the amount of coverage resulting from the reduction described in **G.1.** above to the amount you requested as follows:

   a. Discovery of insufficient premium or incomplete rating information before a loss.

      (1) If we discover before you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current **policy** term (or that portion of the current **policy** term following any endorsement changing the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the current **policy** term (or subsequent date of any endorsement changing the amount of coverage).

      (2) If we determine before you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of your request. Once we determine the amount of additional premium for the current policy term, we will follow the procedure in **G.2.a.(1)** above.

   (3) If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

   b. Discovery of insufficient premium or incomplete rating information after a loss.

      (1) If we discover after you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior **policy** terms. If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the prior **policy** term.

      (2) If we discover after you have a **flood** loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior **policy** terms, we will follow the procedure in **G.2.b.(1)** above.

      (3) If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3. However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition **B.** Concealment or Fraud and Policy Voidance apply.

**H.   Policy Renewal**

**1.**   This **policy** will expire at 12:01 a.m. on the last day of the **policy** term.

**2.**   We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

**3.**   If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

**a.**   If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

**b.**   If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the **policy.** In that case, the **policy** will remain an expired **policy** as of the expiration date shown on the **Declarations Page.**

**4.**   In connection with the renewal of this **policy,** we may ask you during the **policy** term to recertify, on a Recertification Questionnaire that we will provide to you, the rating information used to rate your most recent **application** for or renewal of insurance.

**I.   Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

**J.   Requirements in Case of Loss**

In case of a **flood** loss to insured property, you must:

**1.**   Give prompt written notice to us;

**2.**   As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

**3.**   Prepare an inventory of damaged property showing the quantity, description, **actual cash value,** and amount of loss. Attach all bills, receipts, and related documents;

**4.**   Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the **policy** signed and sworn to by you, and which furnishes us with the following information:

**a.**   The date and time of loss;

**b.**   A brief explanation of how the loss happened;

**c.**   Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

**d.**   Details of any other insurance that may cover the loss;

**e.**   Changes in title or occupancy of the insured property during the term of the **policy;**

**f.**   Specifications of damaged **buildings** and detailed repair estimates;

**g.**   Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

**h.**   Details about who occupied any insured building at the time of loss and for what purpose; and

**i.**   The inventory of damaged property described in **J.3.** above.

**5.**   In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

**6.**   You must cooperate with the adjuster or representative in the investigation of the claim.

**7.**   The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

**8.**   We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

**9.** At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

### K. Our Options After a Loss

Options we may, in our sole discretion, exercise after loss include the following:

**1.** At such reasonable times and places that we may designate, you must:

  **a.** Show us or our representative the damaged property;

  **b.** Submit to examination under oath, while not in the presence of another insured, and sign the same; and

  **c.** Permit us to examine and make extracts and copies of:

    **(1)** Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

    **(2)** **Condominium association** documents including the Declarations of the **condominium,** its Articles of Association or Incorporation, Bylaws, and rules and regulations; and

    **(3)** All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

**2.** We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

  **a.** Quantities and costs;

  **b.** **Actual cash values;**

  **c.** Amounts of loss claimed;

  **d.** Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and

  **e.** Evidence that prior **flood** damage has been repaired.

**3.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

  **a.** Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and

  **b.** Take all or any part of the damaged property at the value we agree upon or its appraised value.

### L. No Benefit to Bailee

No person or organization, other than you, having custody of covered property will benefit from this insurance.

### M. Loss Payment

**1.** We will adjust all losses with you. We will pay you unless some other person or entity is named in the **policy** or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

  **a.** We reach an agreement with you;

  **b.** There is an entry of a final judgment; or

  **c.** There is a filing of an appraisal award with us, as provided in **VII.P.**

**2.** If we reject your proof of loss in whole or in part you may:

  **a.** Accept such denial of your claim;

  **b.** Exercise your rights under this **policy;** or

  **c.** File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

### N. Abandonment

You may not abandon damaged or undamaged insured property to us.

### O. Salvage

We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the **policy** by the value of the salvage.

## P.  Appraisal

If you and we fail to agree on the **actual cash value** of the damaged property so as to determine the amount of loss, either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the insured property is located. The appraisers will separately state the **actual cash value** and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of **actual cash value** and loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

## Q.  Mortgage Clause

The word "mortgagee" includes trustee.

Any loss payable under Coverage **A** — Building Property will be paid to any mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1.  Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

2.  Pays any premium due under this policy on demand if you have neglected to pay the premium; and

3.  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this **policy** apply to the mortgagee.

The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the **building.**

If we decide to cancel or not renew this **policy,** it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or nonrenewal.

If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## R.  Suit Against Us

You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy.** If you do sue, you must start the suit within one year of the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this **policy** and to any dispute that you may have arising out of the handling of any claim under the **policy.**

## S.  Subrogation

Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

**T.  Continuous Lake Flooding**

1.  If your insured **building** has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured building equal to or greater than the **building policy** limits plus the deductible or the maximum payable under the **policy** for any one **building** loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

    a.  To make no further claim under this **policy;**

    b.  Not to seek renewal of this **policy;**

    c.  Not to apply for any flood insurance under the **Act** for property at the **described location;** and

    d.  Not to seek a premium refund for current or prior terms.

    If the **policy** term ends before the insured **building** has been flooded continuously for 90 days, the provisions of this paragraph **T.1.** will apply when the insured **building** suffers a covered loss before the **policy** term ends.

2.  If your insured **building** is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph **T.1.** above or this paragraph **T.2.** (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded one square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph **T.2.** we will pay your claim as if the building is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

    a.  Lake **flood** waters must damage or imminently threaten to damage your **building.**

b.  Before approval of your claim, you must:

    (1)  Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; and

    (2)  Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for flood damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures that it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the **NFIP** and are insured under the **NFIP,** they will not be eligible for the benefits of this paragraph **T.2.** If a U.S. Army Corps of Engineers certified **flood** control project or otherwise certified **flood** control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; and

    (3)  Comply with paragraphs **T.1.a.** through **T.1.d.** above.

c.  Within 90 days of approval of your claim, you must move your **building** to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show that there is sufficient reason to extend the time.

d.  Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your **building.**

**e.** Before the approval of your claim, the community having jurisdiction over your **building** must:

**(1)** Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified for the easement required in paragraph **T.2.b.** above;

**(2)** Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the **building** can be denied; and

**(3)** Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph **T.2.b.** above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a nonprofit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph **T.2.b.** above.

**f.** Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

**g.** You must have **NFIP** flood insurance coverage continuously in effect from a date established by FEMA until you file a claim under this paragraph **T.2.** If a subsequent owner buys **NFIP** insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph **T.2.**, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

**h.** This paragraph **T.2.** will be in effect for a community when the FEMA Regional Director for the affected region provides to the community, in writing, the following:

**(1)** Confirmation that the community and the State are in compliance with the conditions in paragraphs **T.2.e.** and **T.2.f.** above; and

**(2)** The date by which you must have flood insurance in effect.

**U. Duplicate Policies Not Allowed**

**1.** We will not insure your property under more than one **NFIP policy.**

If we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of several options under the following procedures:

**a.** If you choose to keep in effect the **policy** with the earlier effective date, you may also choose to add the coverage limits of the later **policy** to the limits of the earlier **policy**. The change will become effective as of the effective date of the later **policy**.

**b.** If you choose to keep in effect the **policy** with the later effective date, you may also choose to add the coverage limits of the earlier **policy** to the limits of the later **policy**. The change will be effective as of the effective date of the later **policy**.

In either case, you must pay the pro rata premium for the increased coverage limits within 30 days of the written notice. In no event will the resulting coverage limits exceed the permissible limits of coverage under the **Act** or your insurable interest, whichever is less.

We will make a refund to you, according to applicable **NFIP** rules, of the premium for the **policy** not being kept in effect.

2. The insured's option under this Condition U. Duplicate Policies Not Allowed to elect which **NFIP policy** to keep in effect does not apply when duplicates have been knowingly created. Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier **policy**. The **policy** with the later effective date must be canceled.

**V. Loss Settlement**

We will pay the least of the following amounts after application of the deductible:

1. The applicable amount of insurance under this **policy**;

2. The **actual cash value**; or

3. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

## VIII. — LIBERALIZATION CLAUSE

If we make a change that broadens your coverage under this edition of our **policy**, but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before, or during, the **policy** term stated on the **Declarations Page**.

## IX. — WHAT LAW GOVERNS

This **policy** and all disputes arising from the handling of any claim under the **policy** are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

IN WITNESS WHEREOF, we have signed this **policy** below and hereby enter into this Insurance Agreement.

_____
Company Official Signature

# CLAIMS GUIDELINES IN CASE OF A FLOOD

For the protection of you and your family, the following claim guidelines are provided by the National Flood Insurance Program (**NFIP**). If you are ever in doubt as to what action is needed, consult your insurance representative.

Know your insurance representative's name and telephone number. List them here for fast reference:

Insurance Representative _____

Representative's Phone Number _____

- Notify your insurance representative, in writing, as soon as possible after the flood.

- Determine the independent claims adjuster assigned to your claim and contact him or her if you have not been contacted within 24 hours after you reported the claim to your insurance representative.

- As soon as possible, separate damaged property from undamaged property so that damage can be inspected and evaluated.

- Discuss with the claims adjuster any need you may have for an advance or partial payment for your loss.

- To help the claims adjuster, try to take photographs of the outside of the premises showing the flooding and the damage and photographs of the inside of the premises showing the height of the water and the damaged property.

- Place all account books, financial records, receipts, and other loss verification material in a safe place for examination and evaluation by the claims adjuster.

- Work cooperatively and promptly with the claims adjuster to determine and document all claim items. Be prepared to advise the claims adjuster of the cause and responsible party(ies), if the flooding resulted from other than natural cause.

- Make sure that the claims adjuster fully explains, and that you fully understand, all allowances and procedures for processing claim payments on the basis of your proof of loss. This policy requires you to send us detailed proof of loss within 60 days after the loss.

- Any and all coverage problems and claim allowance restrictions must be communicated directly from the Company. Claims adjusters are not authorized to approve or deny claims; their job is to report to the Company on the elements of flood cause and damage.

At our option, we may accept an adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages to your insured property. You must sign the adjuster's report. At our option, we may require you to swear to the report.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy

Secretary

President

Misc-1616 (08/98)

## What is Covered by Flood Insurance — and What's Not

Generally, physical damage to your building or personal property "directly" caused by a flood is covered by your flood insurance policy. For example, damages caused by a sewer backup are covered if the backup is a direct result of flooding. However, if the backup is caused by some other problem, the damages are not covered.

The following charts provide general guidance on items covered and not covered by flood insurance. Refer to your policy for the complete list.

| General Guidance on Flood Insurance Coverage |
| --- |

**What is insured under Building Property coverage**

- The insured building and its foundation.
- The electrical and plumbing systems.
- Central air conditioning equipment, furnaces, and water heaters.
- Refrigerators, cooking stoves, and built-in appliances such as dishwashers.
- Permanently installed carpeting over an unfinished floor.
- Permanently installed paneling, wallboard, bookcases, and cabinets.
- Window blinds.
- Detached garages (up to 10 percent of Building Property coverage). Detached buildings (other than garages) require a separate Building Property policy.
- Debris removal.

**What is insured under Personal Property coverage**

- Personal belongings such as clothing, furniture, and electronic equipment.
- Curtains.
- Portable and window air conditioners.
- Portable microwave ovens and portable dishwashers.

- Carpets not included in building coverage (see above).
- Clothes washers and dryers.
- Food freezers and the food in them.
- Certain valuable items such as original artwork and furs (up to $2,500).

**What is not insured by either Building Property or Personal Property coverage**

- Damage caused by moisture, mildew, or mold that could have been avoided by the property owner.
- Currency, precious metals, and valuable papers such as stock certificates.
- Property and belongings outside of a building such as trees, plants, wells, septic systems, walks, decks, patios, fences, seawalls, hot tubs, and swimming pools.
- Living expenses such as temporary housing.
- Financial losses caused by business interruption or loss of use of insured property.
- Most self-propelled vehicles such as cars, including their parts (see Section IV.5. in your policy).

## General Guidance on Flood Insurance Coverage Limitations
## In Areas Below the Lowest Elevated Floor and Basement

Flood insurance coverage is limited in areas below the lowest elevated floor (including crawlspaces) depending on the flood zone and date of construction (refer to Part **III, Section A.8** in your policy) and in basements regardless of zone, or date of construction.  As illustrated below, these areas include **1.** basements, **2.** crawlspaces under an elevated building, **3.** enclosed areas beneath buildings elevated on full story foundation walls that are sometimes referred to as "walkout basements," and **4.** enclosed areas under other types of elevated buildings.

### What is insured under Building Property coverage

- Foundation walls, anchorage systems, and staircases attached to the building.
- Central air conditioners.
- Cisterns and the water in them.
- Drywall for walls and ceiling (in basements only).
- Nonflammable insulation (in basements only).
- Electrical outlets, switches, and circuit breaker boxes.
- Fuel tanks and the fuel in them, solar energy equipment, well water tanks and pumps.
- Furnaces, hot water heaters, heat pumps, and sump pumps.

### What is insured under Personal Property coverage

- Washers and dryers.
- Food freezers and the food in them (but not refrigerators).
- Portable and window air conditioners.

### What is not insured by either Building Property or Personal Property coverage

- Paneling, bookcases, and window treatments such as curtains and blinds.
- Carpeting, area carpets, and other floor coverings such as tile.
- Drywall for walls and ceilings (below lowest elevated floor).
- Walls and ceilings not made of drywall.
- Most personal property such as clothing, electronic equipment, kitchen supplies, and furniture.



#### 1.  BASEMENTS

Coverage limitations apply to "basements," which are any area of the building, including a sunken room or sunken portion of a room, having its floor below ground level on all sides.



#### 2.  CRAWLSPACE

When a building is elevated on foundation walls, coverage limitations apply to the "crawlspace" below.



#### 3.  ELEVATED BUILDING ON FULL STORY FOUNDATION WALLS

Coverage limitations apply to the enclosed areas (lower floor) even when a building is constructed with what is sometimes called a "walkout basement."



#### 4.  ELEVATED BUILDING WITH ENCLOSURE

Coverage limitations apply to "enclosed areas" at ground level under an "elevated building."  An elevated building allows water to flow freely under the living quarters, thus putting less strain on the building in the event of flooding.  An "enclosure" is the area below the lowest elevated floor that is fully shut in by rigid walls.

**FD 02 21 (10-05)**
**Page 4 of 5**

# EXHIBIT "B"

Form recommended by the
National Board of Fire Underwriters
July 1960

## SWORN STATEMENT IN PROOF OF LOSS

$500,000.00
AMOUNT OF POLICY AT TIME OF LOSS

FLD1131115
Policy Number

10/24/2006
DATE ISSUED

White Plains, NY
AGENCY AT

10/24/2007
DATE EXPIRES

Preferred Services Group of NY
AGENT

To the   Selective Insurance Company

of

At the time of loss, by the above indicated policy of insurance you insured   Lumiram Electric Corp

against loss by   Flood                          to the property described under Schedule "A," according to
the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.
1. Time and Origin: A   Water Damage          loss occurred about the hour of   Unk   o'clock
                                    STATE KIND

on the   15th   day of   April   20  07    The cause and origin of the said loss were (state all known facts
-- attach separate sheet if necessary)   Unknown

2. Occupancy:   The building described or containing the property described was occupied at the time of the loss as follows, and
for no other purpose whatever. (Specifically state nature and purpose of occupancy)   As intended

3. Title and Interest:   At the time of the loss the interest of your insured in the property described herein was   Owner

                                                    No other person or persons had any interest therein or
encumbrance thereon except (state liens/mortgages/encumbrances, if any)

4. Changes:   Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy,
possession, location or exposure of the property described except:   None

5. Total insurance:   The total amount of insurance upon the property described by this policy was at the time of the loss,
$500,000.00                       as more particularly specified in the apportionment attached under Schedule "C," besides which
                                  there was no policy or other contract of insurance, written or oral, valid or invalid.

| | |
|---|---|
| 6.Actual Cash Value of said property at the time of the loss was | Undetermined |
| 7.The Whole Loss and Damage was | $465,270.78 |
| 8.Less Amount of Deductible and/or participation by the insured | $  2,000.00 |
| 9.The Amount Claimed under the above numbered policy is | $463,270.78 |

The said loss did not originate by any act or procurement on the part of your insured or this affiant; nothing has been done by or
with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in
annexed schedules by such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed and no
attempt to deceive said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be
furnished and considered a part of this proof.

* This NOTICE is required by Reg. 95, Art IIIB, of the NYS Insurance Law.

Any person who knowingly and with intent to defraud any insurance company or other person, files a statement of claim containing any materially false
information, or conceals for the purpose of misleading, information concerning any material fact, commits a fraudulent insurance act, which is a crime,
and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."
The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

Print Name / Title →   President

State of   New York

County of   Westchester                Signature / Title →

Subscribed and sworn to before me this   6   day of   June   20 07   Notary Public

WAYNE P. STIX
Notary Public, State of New York
No. 60-4611800
Qualified in Westchester County
Term Expires February 28, 20_10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Index No.:

_____

LUMIRAM ELECTRIC CORPORATION,

                              Plaintiff,

          -against-

SELECTIVE INSURANCE COMOANY,

                              Defendant.

---

## SUMMONS IN A CIVIL ACTION AND COMPLAINT

---

**McDONNELL & ADELS, P.C.**
**Attorneys at Law**
Attorneys for **DEFENDANT**
Office and Post Office Address, Telephone
401 Franklin Avenue
Garden City, New York 11530
(516) 328-3500

---

To

          Attorney(s) for Plaintiff

---

Service of a copy of the within ^ is hereby admitted

Dated,
^

............................................................................
                         Attorney(s) for ^

---

Please take notice

☐ Notice of entry
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named court on

☐Notice of Settlement
that an order ^ of which the within is a true copy will be presented for ^ settlement to the HON. ^ one of the judges
of the within named court, at ^
on ^

Dated,

^                                          Yours, etc.
                                           **McDONNELL & ADELS, P.C.**
                                           Attorneys at Law
To ^                                       *Attorneys for Defendant*
                                           *Office and Post Office Address*
Attorney(s) for ^                          401 FRANKLIN AVENUE
                                           GARDEN CITY, NEW YORK 11530